IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CATHY B. COOK                                                                                    PLAINTIFF

VS.                                                                                    No. 1:04CV27-D-B

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES AND
SAMUEL BUCHANAN                                                                              DEFENDANTS

OPINION GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT

Presently pending before the Court is Defendant Samuel Buchanan's motion for summary judgment. Upon due consideration, the Court finds that the motion shall be granted in part and denied in part.

*A. Factual Background*

The Plaintiff, a white female, began her employment with the Mississippi Department of Human Services ("DHS") in 1986. Over the years, Plaintiff has received several promotions and currently holds the position of case manager in the Chickasaw County DHS office. In the fall of 2000, the position of Director in the Chickasaw County office became available. The Plaintiff asserts that she was qualified for the position and was on the list of eligibles who were being considered to fill the vacancy. Ultimately, the position was filled by Samuel Buchanan, a black male, who the Plaintiff asserts was less experienced and less qualified.

As a result of Buchanan's hiring, Cook filed an EEOC charge against DHS on the basis of reverse race discrimination. The EEOC charge was dismissed and Plaintiff filed an action against DHS on the basis of racial discrimination in violation of Title VII. Another Court in this district entered summary judgment against the Plaintiff, and the Fifth Circuit affirmed that

judgment in August 2004.

Plaintiff filed this second action alleging that Buchanan became vindictive and retaliatory towards her. The Plaintiff alleges that Buchanan took adverse employment actions against her because of her race and in retaliation for filing her first lawsuit. This Court dismissed all claims against DHS in its order on August 13, 2004. On September 20, 2004, this Court issued an order allowing Plaintiff to pursue her claims against Buchanan. On February 25, 2005, the Plaintiff filed her Third Amended Complaint. The Court now turns to the facts underlying Plaintiff's claims.

On February 12, 2001, Buchanan became the director of the Chickasaw County DHS office and remains in that position today. Approximately two weeks after Buchanan became director, Toni Vaughn, the other case manager in Chickasaw County, was terminated. The decision to terminate Vaughn was made prior to Buchanan's tenure. This action left the Chickasaw County DHS office with one case manager, Cathy Cook, and resulted in Cook performing duties for both the Okolona and Houston sides of the county.

On April 16, 2001, the Plaintiff wrote the Defendant a letter concerning her workload. The Plaintiff informed the Defendant that she was working numerous overtime hours due to her increased workload. The Plaintiff requested retroactive compensatory leave to the date she assumed double duties until the present. She also asked for proscriptive leave continuing until a new case manager was hired. On April 20, 2001, the Defendant responded in writing to Cook's request. He denied her request citing two reasons. First, Buchanan stated that DHS policy only allows overtime work if it has been approved by the supervisor prior to the performance of the work. Second, Buchanan stated that DHS policy allows overtime only when working on special projects and not just for completing regular job duties. Buchanan stated that he would discuss

the matter with the regional director, but for now the answer was no. Buchanan informed Cook that for the foreseeable future she would be the only case manager and despite her increased workload, he only expected normal working hours.

Cook's second allegation stems from Buchanan assigning her the additional task of processing applications for the Temporary Assistance for Needy Families ("TANF") program in April 2003. The Plaintiff claims that she was assigned this duty in retaliation for her previous lawsuit. Plaintiff alleges that this work was normally reserved for eligibility workers and not case managers. The Plaintiff alleges that extra hours were required to process all of the applications.

The Defendant states that he asked the Plaintiff to temporarily process the TANF applications because the county had recently hired two new eligibility workers and needed time to properly train them. Buchanan stated that Cook already handled cases of the TANF applicants who were approved for the program and she had prior experience processing the applications. Buchanan stated that he never asked Cook to work extra hours and expected that those applications could be processed during normal work hours. It is important to note that when Buchanan assigned this duty to Cook, another case manager had been hired and she was no longer managing cases for both sides of Chickasaw County.

Cook finally alleges that Buchanan retaliated against her by not promoting her to the position of supervisor. The supervisor position in the Chickasaw County DHS office came open in June 2000, and that position has not been filled. Buchanan has yet to request a list of eligibles and set the hiring process into motion. The Plaintiff alleges that Buchanan inquired about various persons' interest in the position. In addition, she alleges that Buchanan never asked about her interest in the position. Finally, she alleges that Buchanan purposefully filled other

positions and left the supervisor position open to retaliate against her.

Buchanan stated that he did not ask Cathy Cook about her interest in the supervisor position because she told him personally she was interested.  In addition, Buchanan cited a DHS request that each county leave a position open due to budgetary constraints.  Buchanan also stated that he filled other positions because he felt actual caseworkers and eligibility workers were more important to the mission of DHS than a supervisor would be.  Finally, from June 2000 to the present, Buchanan did not request a list of eligibles, interview anyone for the position, or offer the job to anyone.  The supervisor position has not been filled.

The Defendant now moves this Court grant him summary judgment on all of the Plaintiff's federal claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981.  The Defendant states that he is entitled to qualified immunity.  Finally, the Defendant asks this Court that if the Court grants his summary judgment motion, the Court will decline its supplemental jurisdiction and dismiss the pendent state law claims.  The Plaintiff counters that Defendant is not entitled to summary judgment because he is not entitled to immunity.  The Plaintiff asserts that Buchanan violated her constitutional rights and acted unreasonably.  Finally, the Plaintiff asks that should the Court dismiss the federal claims that it exercise its discretion and keep the pendent state claims.

### B.  Standard of Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case" Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the

non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" <u>Celotex Corp.</u>, 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56© mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. <u>Matsushita Elec. Indus. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

*C. Discussion*

1. Section 1981 Claims

The Plaintiff claims that Buchanan retaliated against her because she filed an EEOC charge and a lawsuit against DHS for selecting him as director. The Fifth Circuit has stated that to present a prima facie case of retaliation under Title VII or § 1981, a plaintiff must show: (1) he/she was engaged in an activity protected by Title VII; (2) he/she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 319 (5th Cir. 2004). <u>See Banks v. East Baton Rouge Parish Sch. Bd.</u>, 320 F.3d 570, 575 (5th Cir. 2003); <u>See Also Foley v. University of Houston Sys.</u>, 355 F.3d 333, 339 (5th Cir. 2003) (the elements for establishing a prima facie case of retaliation under §1981 are identical to those that must be established under

Title VII). To demonstrate the occurrence of an adverse employment action, a plaintiff must show he/she suffered an "ultimate employment decision." Davis, 383 F.3d at 319; See Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995). The Fifth Circuit has stated that ultimate employment decisions include actions affecting job duties, compensation, or benefits, and include hiring, granting leave, discharging, promoting, and compensating. See Banks, 320 F.3d at 575.

The Plaintiff's ability to show a prima facie case of unlawful retaliation is tenuous at best. The Plaintiff showed she was engaged in a protected activity, filing her EEOC charge. Next, the Plaintiff must show that she was subject to an adverse employment action. The Plaintiff alleges she was forced to work overtime and was not provided compensation for her extra work. She also alleges that she was not promoted and that she was required to work overtime. However, these allegations represent a weak claim for adverse employment actions. Nonetheless, the Court finds that Plaintiff has shown that these represent adverse employment actions because they impacted her leave and job duties. Finally, the Plaintiff must show a causal connection. The Plaintiff must raise a question that Buchanan was aware of the protected activity. See Manning v. Chevron Chem. Co., 332 F.3d 874, 884 (5th Cir. 2003). Here, the Plaintiff has raised the question that Buchanan was aware of her EEOC charge for discrimination. Thus, the Court finds that the Plaintiff has made a prima facie case for unlawful retaliation.

If the Plaintiff succeeds in making a prima facie case for retaliation, the burden shifts to the Defendant to offer a legitimate rationale for the underlying employment action. Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001). If the Defendant succeeds in making such a showing, then the burden shifts back to the Plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. Id. The Court will

consider each claim made by the Plaintiff.

A. Compensatory Leave

The Defendant stated that he was following DHS procedures and state law when he denied the Plaintiff's request for compensatory leave. Mississippi law states: "When, in the opinion of the appointing authority, it is essential that a state employee work after normal working hours, the employee may receive credit for compensatory leave." Miss. Code. Ann. § 25-3-92(1). DHS policy on compensatory leave states, "An employee should not be earning compensatory time unless his/her supervisor has authorized, in writing, the accrual of overtime prior to the performance of the work. Approval of compensatory leave should always be based on special project assignments that would require an employee to work more than regular working hours."

The Court sympathizes with the amount of overtime the Plaintiff worked without compensatory leave. However, the Court notes that the Plaintiff had been employed by DHS for many years and should have been aware of the rules and regulations concerning leave. The Defendant was bound by DHS policy not to grant the Plaintiff leave without prior approval. Therefore, the Court finds that denial of her compensatory time prior to her March 2002 letter was legitimate. The Court notes that it is no secret DHS is constantly underfunded. Thus, the Defendant's rationale regarding his answer to proscriptive compensatory leave was also legitimate. The Defendant did not request that the Plaintiff work overtime and stated that he would discuss the matter with his superior. Therefore, the Court finds that the Defendant had a legitimate rationale in denying Plaintiff's compensatory leave. Thus, the burden shifts back to the Plaintiff. The Court finds the record completely absent of any concrete proof that the Defendant acted in retaliation. The Plaintiff's summary judgment brief is filled with large

passages of deposition testimony and language from her complaint. The Court finds nothing in the record persuasive to create a material issue of genuine fact on this issue. Thus, the Defendant is entitled to judgment as a matter of law.

B. TANF Applications

This allegation is completely devoid of any merit. Here, the Plaintiff did not suffer an adverse employment action. She was merely asked to take applications on a temporary basis while two, new eligibility workers were trained. At this point, the Plaintiff was only managing cases from the Okolona side of the county. She did not suffer a decrease in pay, a demotion, or any relief of her duties. In addition, she was not required to stay after hours perform this duty.

The Defendant stated that Cook was already handling the approved applicants for the TANF program. In addition, she had prior experience in taking these applications. The Defendant thought she was the right person to do this job at the time. This job was temporary and it was a legitimate use of resources. The Court finds this allegation without merit and the Defendant is entitled to judgment as a matter of law.

C. Supervisor Position

The Plaintiff claims that the Defendant denied promoting her due to retaliation. The record shows that the Defendant has never requested a list of eligibles from the State Personnel Board, interviewed anyone for that position, or hired anyone for that position. In fact, the Defendant stated that he left this position vacant because of DHS budgetary concerns. The Defendant has stated he thought it was more important to fill the caseworker and eligibility worker positions rather than the supervisory position. The Court finds these reasons legitimate. In addition, the Court notes cases from other circuits are persuasive when stating that failing to fill a vacant position is not retaliation. See Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d

681, 683 (7th Cir. 2000) (holding that when an employer does not attempt to fill a position, "all aspirants for promotion are treated alike" and the plaintiff cannot establish a prima facie case) Exum v. United States Olympic Cmte., 389 F.3d 1130, 1138 (10th Cir. 2004) (holding that a plaintiff cannot make a prima facie case when "nothing in the record suggests that the defendant submitted any names" to fill a vacant position).

Thus, the Court finds a legitimate rationale for not filling the position. The Plaintiff has failed to offer any proof, minus speculation and conjecture, that the Defendant's chief reason for failing to promote her was retaliatory in nature. Therefore, the Court finds that no genuine issue of material fact exists and Defendant is entitled to a judgment as a matter of law.

The Court finds that the Plaintiff cannot meet her burden to withstand summary judgment scrutiny on her § 1983 and § 1981 claims based upon a legitimate, non-discriminatory rationale by the Defendant. The Defendant also claims that he is cloaked with qualified immunity. The Court will now turn its analysis to that defense.

2. Qualified Immunity

In ruling on a defendant's claim of qualified immunity, the court first must determine whether the plaintiff has alleged the violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 230, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991). Then, the court must determine whether the officer's actions were objectively reasonable under settled law in the circumstances with which he was confronted. Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991); See Pfannstiel v. Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) (If "reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.").

Claims against individual public officials under § 1981 are subject to the defense of

qualified immunity. Todd v. Hawk, 72 F.3d 443, 445 (5th Cir. 1995). Claims against individuals under § 1983 are also subject to the qualified immunity defense. Coleman v. Houston Independent School Dist., 113 F.3d 528, 534 (5th Cir. 1997). Public officials are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The reasonable person test is not reached until the Court first finds that the conduct alleged by the plaintiff, if proved, would constitute a violation of his clearly established rights. Siegert v. Gilley, 500 U.S. 226, 233-34, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991).

In the case *sub judice*, the Plaintiff has alleged the violation of clearly established statutory and constitutional rights— including her right to be free from retaliation for exercising rights protected by § 1981. The Court is satisfied that the Plaintiff has alleged violations of § 1981 and the Civil Rights Act of 1991. Thus, the Court must now determine if the Defendant's actions were objectively reasonable. The Court will consider each of the Defendant's actions in turn.

First, the Court will analyze the Defendant's denial of Cook's compensatory time from the period late February 2001 until her letter of April 16, 2001. The Defendant stated that state law and DHS policy do not allow granting of retroactive compensatory leave in exchange for overtime. In addition, state law and DHS policy do not allow a worker to receive compensatory leave for working overtime on anything except a special project. The Defendant abided by state law and DHS policy. Thus, the Court finds Buchanan acted in an objectively reasonable manner.

Second, the Court now turns to the denial of proscriptive compensatory leave from the April 16, 2001, letter until a second case manager was hired. The Plaintiff alleges that the

Defendant denied her request for retaliatory purposes. The Defendant stated that he followed DHS policy and state law in denying her request. The Defendant stated that he believed that the Plaintiff's duties were ordinary and normal and were capable of completion during normal working hours. Buchanan never asked the Plaintiff to work overtime. In fact, he told her to leave at 5:00 p.m. In addition, the Defendant checked with his superior to ascertain if compensatory leave was possible. Nothing in the record suggests that the Defendant had any other motive than following a consistent DHS policy. The Plaintiff attempted to bloody the Defendant's nose by implicating that DHS clients would suffer because of this decision. The fact that services might have suffered is not the subject of this lawsuit. Thus, the Court finds the Defendant's actions were objectively reasonable.

Third, the Court turns to Defendant's temporary assignment of TANF applications to the Plaintiff. The Plaintiff alleges that she was asked to perform extra work in retaliation for her EEOC charge. However, the record shows that the Defendant did not ask her to work overtime, nor demote her in any way. In addition, the Defendant explains that he wanted the office to run as efficiently as possible. Therefore, he temporarily assigned the Plaintiff the TANF applications so that two new eligibility workers could be trained. The Defendant stated that he believed this would expedite training quicken the processing of applications. In light of the facts, the Court finds that the Defendant acted in a objectively reasonable manner.

Finally, the Court turns to the Defendant's decision to leave the supervisor position vacant. The Plaintiff alleges that Defendant failed to inquire about her interest in the position and did not promote her for retaliatory purposes. The Defendant did not inquire about the Plaintiff's interest in the position because she had informed him personally of her interest. In addition, the Defendant stated that he has not filled the position because DHS asked each county

office to leave one position open due to budgetary concerns.  The Defendant stated that he has filled other positions because he believes them to be more valuable to his office's operation.  The Defendant also has not interviewed anyone nor has asked the state for a list of eligibles.  The Court notes that DHS is constantly underfunded by the State of Mississippi.  The Defendant acted in a reasonable manner because he must make decisions to use funds efficiently.  The Defendant chose to fill lower paying positions first that have an immediate impact of DHS' services.  Thus, the Court finds that the Defendant acted in a reasonable manner in this instance.  Therefore, in all actions the Defendant acted reasonably and is entitled to qualified immunity.

3.  Pendant State Law Claims

The Defendant moved this Court to dismiss the pendant state law claims if the Court granted summary judgment in favor of the Defendant on the federal claims.  Under 28 U.S.C. § 1367(C) the Court <u>may</u> decline to exercise supplemental jurisdiction over state law claims if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claims which the court had original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstance, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c)(1)-(4).  After dismissing all the federal claims, district courts are given "wide" latitude in deciding whether to dismiss pendant slaw law claims.  <u>Robertson v. Neuromedical Center</u>, 161 F.3d 292, 296 (5th Cir. 1998).  Such a determination is reviewed for abuse of discretion.  <u>Id</u>. at 296.  The general rule is that a district court should decline jurisdiction over state law claims when all federal law claims have been dismissed, but this rule is neither mandatory or absolute.  <u>Smith v. Amedisys, Inc.</u>, 298 F.3d 434, 446-47 (5th Cir. 2002).

This case does not present any novel or complex issues of state law. However, the state laws obviously predominate over the non-existent federal claims and all federal claims have been dismissed. Finally, there are no "exceptional circumstances" present that compel the Court to decline jurisdiction. Therefore, under section 1367 there are two factors favoring retaining jurisdiction and two factors favoring declining jurisdiction. Under these circumstances, the Fifth Circuit directs the court to consider "factors of judicial economy, convenience, fairness, and comity. Id. at 447.

In Smith, the court held that the district court did not abuse its section 1367(C) discretion where the litigation had been pending for almost three years, a substantial amount of discovery had been conducted, the matter was in advanced stages of litigation, the court had devoted many hours to the case and had substantial familiarity with the case. Id. The facts of this case rest within the Smith holding. This case has been pending in this Court for over two years, most if not all discovery has been completed, and having drafted numerous opinions and orders, the Court has undoubtedly expended a great amount of time researching and reviewing this case. Therefore, the Court finds that in the interest of judicial economy, convenience and fairness the Court will maintain jurisdiction over the remaining state law claims.

*D. Conclusion*

After careful consideration of the facts, the Court finds that the Plaintiff has not met her burden to survive summary judgment. While the Plaintiff can make a weak prima facie case for unlawful retaliation under § 1981, the Defendant rebutted that evidence with legitimate rationales for each employment decision. The Plaintiff cannot demonstrate that the Defendant's articulated reason for the employment action was a pretext for retaliation. Therefore, no genuine issues of material fact exist and the Defendant is entitled to judgment as a matter of law. In addition, the

Court finds that the Defendant is also cloaked in qualified immunity. The Plaintiff can allege a violation of a clearly established statutory right, but the Court finds that the Defendant's actions were objectively reasonable. Therefore, the Court finds that the Defendant is entitled to judgment as a matter of law. In addition, the Court shall retain jurisdiction over the state law claims in the interest of judicial economy, convenience and fairness.

    A separate order in accordance with this opinion shall issue this day.

    This the 28th day of February 2006.

                                              /s/ Glen H. Davidson
                                              Chief Judge